UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:18-cv-62093-UU

ALFREDO QUINTERO,

    Plaintiff,

v.

GEICO MARINE INSURANCE CO.,

    Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion"), D.E. 16, and Defendant's Motion for Summary Judgment ("Defendant's Motion" and together with Plaintiff's Motion, the "Motions"). D.E. 15. The Court has reviewed the Motions, the pertinent portions of the record and is otherwise fully advised in the premises. For the reasons discussed *infra*, Defendant's Motion is GRANTED and Plaintiff's Motion is DENIED.

**I.  Procedural Background**

On October 31, 2018, the Court entered its scheduling order for pretrial conference and trial, setting a Motion deadline of March 22, 2019. D.E. 7. On February 14, 2019, Defendant, Geico Marine Insurance Company ("Geico")[1], filed its motion for summary judgment. D.E. 15. One day later, Plaintiff, Alfredo Quintero ("Quintero"), filed his motion for partial summary judgment. D.E. 16. Quintero subsequently moved for an extension to respond to Geico's motion on grounds that certain depositions were outstanding, and given that the motion cutoff had not yet expired, the

---

[1] Defendant makes reference to BoatU.S. throughout its Motion, but neither party has explained BoatU.S.'s relationship to Geico. As both parties use "Geico" and "BoatU.S." interchangeably, as the parties assert that Geico and BoatU.S. jointly insured the Vessel, as the Policy and every other document provided as evidence in this action is labelled "Geico Marine Insurance", as "BoatU.S." is not a party to this litigation, and as the issue has no bearing on this Court's ruling, the Court only refers to Geico.

1

Court granted Quintero a minor extension until March 14, 2019 to respond to Geico's motion for summary judgment. D.E. 38. In that order, the Court stated:

> Plaintiff SHALL FILE his response to Defendant's Motion for Summary Judgment **by Thursday, March 14, 2019.** NO FURTHER EXTENSIONS WILL BE GRANTED AND THE COURT WILL NOT CONSIDER ANY RESPONSES FILED AFTER THIS DATE.

*Id.* at 5 (emphasis in original).

Despite the Court's glaring warning that it would not consider responses filed after this date, Quintero filed his response to Geico's Motion on March 15, 2019, a day after the deadline the Court imposed for his response. D.E. 39. On this basis alone, and having found that Geico's Motion has merit, the Court would grant Geico's Motion and dismiss this action. *See* Fed. R. Civ. P. 41; *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962) (clarifying that Rule 41(b) permits a Court to dismiss an action *sua sponte* for failure to comply with court order). However, given the pendency of Quintero's motion for summary judgment and that his response was only a day late, the Court considers whether Quintero's Motion or his response to Geico's Motion demonstrates that there is a genuine dispute of material fact precluding summary judgment in Geico's favor; it does not.

## II. Factual Background

Unless otherwise indicated, the following facts are undisputed.

### A. Quintero's May 4, 2018 Conversation with Geico

Geico issued an insurance policy (the "Policy") to Quintero with a policy period of May 5, 2017 to May 5, 2018 for a 32-inch 2008 Renegade Boats Runabout (the "Vessel"). D.E. 15 ¶ 1; D.E. 15-3; D.E. 15-10 ¶ 5. On May 4, 2018, the day before the Policy period ended, Quintero contacted Geico regarding a declined charge on his credit card from Geico. D.E. 33-4. Geico informed Quintero that his policy was up for renewal and Geico's automatically debited future installments and renewal payments from the customer's card on file. *Id.* at 5. However, because

2

payment was declined on Quintero's card, the payment was not taken. *Id.* at 5-6. After being told that Geico could not lower the amount owed, Quintero stated that Geico would "lose him as a customer." *Id.* at 14. Quintero did not pay the installment amount due on May 5, 2018, and on May 10, 2018, Geico sent Quintero a Notice of Policy Expiration, informing him that the Policy had expired as of May 5, 2018. D.E. 15-1.

### B. May 25, 2018 Conversation with Geico & Reinstatement

On May 25, 2018, at approximately 7:28 A.M., Quintero called Geico to "pay his boat policy." D.E. 17-2 at 2. Geico informed him that his last policy payment had been due on May 5, 2018, and asked him if he wanted to reinstate his policy, to which Quintero responded that he did. D.E. 17-2 at 3. Before taking payment, Geico asked Quintero some questions regarding the status of the Vessel and Quintero responded that the Vessel had no damage, was "sound and seaworthy," that the last time he physically saw the Vessel was "every day," and the Vessel was currently in his house. *Id.* at 4. At the end of the conversation, Geico confirmed that the policy was reinstated and backdated to May 5, 2018. D.E. 17-2 at 14.

### C. Theft & Investigation

On May 25, 2018, at 2:43 PM, approximately seven hours after Quintero called Geico to reinstate his Policy, Quintero reported the theft of the Vessel and trailer to the Broward County Sherriff's Office. D.E. 15-4. The same day, at approximately 6:30 p.m., Quintero called Geico to make a claim under the Policy for the stolen Vessel, with a date of loss of May 25, 2018. D.E. 17-3. Geico acknowledged Quintero's claim and immediately began an investigation on the same day. D.E. 15-5. On July 13, 2018, Geico sent Quintero correspondence, advising that the investigation was ongoing and that coverage for the loss would be determined after receipt of the full police investigation report. D.E. 15-6.

### D. Final Police Report & Non-Coverage

On January 17, 2019, the Broward County Sheriff's Office issued a final report. D.E. 15-7. In the report, the reporting officer stated that video-surveillance footage from a neighboring home showed a black pickup truck hauling the trailer and the Vessel away at 4:58 a.m., on May 25, 2018, approximately three hours before Quintero called Geico to reinstate the Policy. D.E. 15-7 at 3. On January 30, 2019, Geico sent Quintero a rescission letter and denial of coverage. D.E. 15-8. Geico explained that it was denying coverage for the Vessel and rescinding the policy *ab initio* because Quintero misrepresented the condition of the Vessel and that that he had possession of it when he called to reinstate his policy on May 25, 2018, which Geico stated was material to its decision to insure the Vessel. *Id.*

## III. LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial."

*See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. *Impossible Elec. Techs., Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255.

## IV. Analysis

### A. The Parties' Grounds for Summary Judgment

Quintero argues that he is entitled to partial summary judgment on all of Geico's affirmative defenses and as to whether the Policy was cancelled or not renewed. D.E. 16. Specifically, Quintero argues that there is no genuine dispute that Geico failed to comply with the Policy's nonrenewal and cancellation provisions, that Quintero's coverage never lapsed, and therefore the theft of his Vessel was a covered loss under the Policy. D.E. 16.

Geico also moves for summary judgment, arguing that Quintero's material misrepresentations as to the status of the Vessel on May 25, 2018 preclude any recovery on three related grounds. First, Geico argues that under the federal common law doctrine of *uberrimae fidei*, the Policy was void *ab initio* when Quintero misrepresented the status of the Vessel during his phone call with Geico to reinstate the Policy on May 25, 2018. Second, Geico argues that the plain language of the Policy precludes coverage *ab initio* where an insured "omits, conceals, misrepresents, swears falsely, or commits fraud in reference to any material matter relating to this insurance before or after any loss." D.E. 15 at 5. Lastly, Geico argues that under Florida Statute § 627.409, Quintero's misrepresentation prevents recovery under the Policy because his misrepresentation is material to Geico's acceptance of the risk under the Policy and Geico would not have issued the Policy had it known the boat was stolen

Accordingly, the Court focuses its inquiry on Geico's Motion because Geico moves on a dipositive issue: whether the Policy is void *ab initio*. As Quintero's declaratory judgment claims depend upon coverage for the stolen Vessel under the Policy, if the Policy is void *ab initio*, then Quintero's claims fail as a matter of law. The Court ultimately concludes that Quintero's misrepresentations regarding the status of the Vessel void the policy *ab initio* under *uberrimae*

*fidei*. As such, the Court does not address Quintero's remaining arguments, although the court has reviewed them and finds that they do not preclude summary judgment in Geico's favor.

    A. *Uberrimae Fidei*

        i. Standard

The doctrine of *uberrimae fidei* applies to marine insurance and "requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk." *HIH Marine Servs., Inc. v. Fraser,* 211 F.3d 1359, 1362 (11th Cir. 2000). As explained by the Fifth Circuit:

> Nothing is better established **in the law of marine insurance** than that 'a mistake or commission material to a marine risk, **whether it be willful or accidental, or result from mistake, negligence or voluntary ignorance, avoids the policy** . . . 'Concealment,' in the law of marine insurance, is the failure to disclose any material fact or circumstance in relation to the subject matter of the contract which may increase the liability to loss, or affect the risk or obligation assumed, **and which is, in fact or law, within or ought to be within, the knowledge of one party, and of which the other party has no actual or presumptive knowledge.** In the case of marine insurance, the insured must disclose all facts material to the risk, **and in default of such duty the contract may be avoided by the insurer** . . . the policy never attaches and is void, **for the reason that the risk assumed is not the one intended to be assumed by the parties.**

*Northfield Ins. Co. v. Barlow*, 983 F. Supp. 1376, 1380 (N.D. Fla. 1997) (quoting *Gulfstream Cargo, Ltd. v. Reliance Ins. Co.*, 409 F.2d 974, 980–81 (5th Cir.1969)) (citations omitted) (emphasis added).

        ii. *Uberrimae Fidei* Applies

The parties' dispute whether *uberrimae fidei* applies to this action as a matter of law. Geico argues that *uberrimae fidei* applies to this Policy because "it is well-settled that the marine insurance doctrine of *uberrimae fidei* is the controlling law of this circuit." *HIH Marine Servs.* 211 F.3d at 1362. Notwithstanding this settled legal principle, Quintero, relying *GEICO Marine Insurance Company v. Shackleford*, 316 F.Supp.3d 1365 (2018), argues that Quintero and Geico

7

contracted out of *uberrimae fidei*. D.E. 39 at 11. In *Shackleford*, the Court found that the Policy language imposed different obligations on the insured than *uberrimae fidei* and therefore, the parties had "contracted around" *uberrimae fidei*. As the policy language in the subject Policy is almost identical to the language in *Shackleford*, Quintero argues it should control over *uberrimae fidei*:

> **Section V – General Conditions, J. Fraud and Concealment**
>
> There is no coverage from the beginning of this policy if an "insured" has omitted, concealed, misrepresented, sworn falsely, or committed fraud in reference to any material matter relating to this insurance before or after any loss.

D.E. 15-3 at 16, 30.

The language in this Policy is similar to *Shackleford,* but the Court is unpersuaded by Quintero's argument. The Court also disagrees with the *Shackleford* court,[2] which relies entirely on *King v. Allstate Ins. Co*., 906 F.2d 1537, 1542 (11th Cir. 1990), an easily distinguishable decision. Like *Shackleford,* in *King* the subject insurance policy contained a provision that voided the policy "only if the insured <u>intentionally</u> concealed or misrepresented a material fact during the application process." *King* 906 F.2d at 1539 (emphasis added). Given the contrast between the type of misrepresentation needed to void the policy under the policy language and *uberrimae fidei,* the Eleventh Circuit held that the parties had "contracted around" *uberrimae fidei*. *King*, 906 F.2d at 1541.

---

[2] Even if the parties had contracted around *uberrimaei fidei*, the Policy language at issue here provides Geico with a comprehensive right to void the Policy *ab initio* at any time before or after a loss in the case of a misrepresentation or omission with regard to "any material matter." D.E. 39 at 11. Although "material" is not defined in the Policy, the Policy is governed by federal admiralty law, which defines material as: "that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk." *Kilpatrick*, 795 F.2d at 942–43. As discussed in detail *infra,* there is no genuine dispute that Quintero misrepresented that the Vessel was in his house and was in good condition. There is also no genuine dispute as to whether these facts are material to the calculation of the risk of insuring the Vessel; insuring a stolen Vessel is akin to insuring a loss. *See infra* pp. 11-13. Thus, even if the parties had contracted out of *uberrimae fidei* (they did not), the plain language of the Policy would preclude coverage *ab initio*, invalidating Quintero's claim.

8

In contrast to *King*, here the Policy language does not run counter to *uberrimae fidei*; there is no requirement that any misrepresentation or omission be intentional. Instead, the language of this Policy mirrors the obligations imposed by *uberrimae fidei*. *Compare* D.E. 15-3 at 16 ("There is no coverage from the beginning of this policy if an has omitted, concealed, misrepresented, sworn falsely, or committed fraud in reference to any material matter relating to this insurance before or after any loss."), *with Northfield Ins. Co.,* 983 F. Supp. at 1379–80 (finding holding that "the parties did not contract around the principles of *uberrima fidei*" because relevant clause in the insurance Policy and application provided "Any misrepresentations . . . will render insurance coverage null and void from inception . . . ") (emphasis added); *see also Certain Underwriters at Lloyds, London v. Giroire*, 27 F. Supp. 2d 1306, 1312 (S.D. Fla. 1998) (holding that "the language of the insurance policy itself is consistent with the doctrine of *uberrimae fidei*." Because the relevant clause stated that any misrepresentations "will render insurance coverage null and void from inception. Thus the parties clearly intended the obligations of *uberrimae fidei* to apply to this insurance transaction.") (emphasis added); *cf. Axis Reinsurance Co. v. Henley,* No. 4:08CV168-WCS, 2009 WL 3416248, at *14 (N.D. Fla. Oct. 22, 2009) (finding *uberrimae fidei* did not apply to marine insurance policy because relevant language of the Policy voided coverage from inception only if the insured "intentionally conceal[ed] or misrepresent[ed] any material fact") (emphasis added).

Further, the *King* court sought to distinguish itself from binding Fifth Circuit precedent applying *uberrimae fidei* on grounds that in that case, "there was, in fact, no dispute as to which law to apply . . . th[at] court did not confront any issue relating to the policy vis-a-vis either state or maritime law." *King* 906 F.2d at 1541 (emphasis added). Similarly, in *Shackleford* "neither

9

party adresse[d] whether federal or Florida law governs the interpretation of the policy." Here, there are no such issues, the Policy expressly states:

> **This policy is to be construed under United States federal admiralty law.** In the absence of controlling United States federal admiralty law, this policy is to be construed under the laws of the state, territory or possession listed on the Declarations Page as "your" address of record, without regard to that jurisdiction's rules on choice of law.

D.E. 15-3 at 31 (emphasis added). *Uberrimae fidei* is "the controlling [United States federal admiralty] law of this circuit." *HIH Marine Servs.* 211 F.3d at 1362. Thus, pursuant to its plain language, the Court must construe the Policy in-line with *uberrimae fidei*. *See Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 695 (11th Cir. 1984), *on reh'g*, 779 F.2d 1485 (11th Cir. 1986) ("The general rule of marine insurance, requiring full disclosure, is well settled in this circuit, and as a clear rule of maritime law it is the controlling federal rule even in the face of contrary state authority."); *All Underwriters v. Weisberg*, 222 F.3d 1309, 1312 (11th Cir. 2000) ("Federal courts have long considered actions involving marine insurance policies to be within the admiralty jurisdiction of the federal courts and governed by federal maritime law."). Accordingly, the Court concludes that *uberrimae fidei* applies to the Policy as a matter of law.[3]

### iii. *Uberrimae Fidei* Voids the Policy

*Uberrimae fidei* renders an insurance policy void *ab initio* if the insured misrepresents, omits, or conceals a fact that is material to the insurer. *Steelmet, Inc.*, 747 F.2d at 695. "Materiality under federal maritime law is broader in application than Florida law . . . Under federal law, 'materiality' is defined as 'that which could possibly influence the mind of a prudent and intelligent

---

[3] Quintero also argues that Geico cannot void the Policy because "absent fraud, the Policy in question requires 45 days advance notice of a cancellation that is based on a unintentional material misrepresentation." D.E. 39 at 11. This is a mischaracterization of the Policy. The Policy requires 45 days' notice before cancellation takes effect, but there is no reference to "unintentional material misrepresentations." *See* D.E. 15-3 at 16 ("[cancellation] can be done by giving notice of cancellation at least 45 days before the date cancellation takes effect."). Moreover, under *uberrimae fidei*, Policy is void *ab initio*, and therefore any limits on *cancellation* are irrelevant; the Policy is not cancelled, it never came into effect.

insurer in determining whether he would accept the risk.'" *Giroire*, 27 F. Supp. 2d at 1312-13 (quoting *Kilpatrick*, 795 F.2d at 942–43) (other citations omitted).

Geico argues that it is entitled to summary judgment because Quintero made material misrepresentations as to the status of the Vessel when he reinstated the Policy with Geico on May 25, 2018. In support, Geico points to the recorded transcript from Quintero's conversation with Geico:

> Q. I have to ask you some questions, then we can make a payment and reinstate the policy, okay?
>
> A. Sure.
>
> Q. First off, is the boat – does the boat have any damages or is it – has it been damaged?
>
> A. <u>No, its beautiful</u>.
>
> Q. Okay, and is it seaworthy?
>
> A. <u>Sound and seaworthy</u> . . . <u>it's in good condition</u> . . .
>
> Q. Okay. And when was the last time you physically saw your boat?
>
> A. <u>Every day.</u> <u>It's in my house</u>.

D.E. 17-2 at 3-4. (emphasis added).

Based on the above statements, Geico argues that when he called to reinstate his Policy on May 25, 2018, Quintero failed to disclose that the Vessel had been stolen, and affirmatively misrepresented that he had seen the Vessel that day and that it was currently in his house, in violation of the duty of full disclosure under *uberrimae fidei*. Quintero provides no contrary evidence that these statements do not constitute misrepresentations or omissions, i.e. that the Vessel was actually in his house or in good condition at the time he made the statements.[4] *See*

---

[4] Quintero argues that at the time he signed the insurance re-application on June 1, 2018, Geico was already aware of the fact that the Vessel was stolen. But, Geico's argument relates to misrepresentations made during the May 25, 2018

11

*Giroire*, 27 F. Supp. 2d at 1312-13 ("In the context of marine insurance, "concealment" is the failure to disclose any material fact or circumstance in relation to the subject matter of the contract which may increase the liability to loss, or affect the risk assumed, and which is, in fact or law, within or ought to be within, the knowledge of one party . . . .") (quotation and internal quotation marks omitted).

As to materiality, Geico asserts that whether the Vessel was in Quintero's possession or in good condition are material because they influence the risk that Geico accepted in reinstating the Policy. In support, Geico points to an affidavit by its claims adjuster, Jeffrey O'Keefe ("O'Keefe"), asserting that had it "known the vessel was already stolen at the time Quintero requested to re-instate the policy, [Geico] would not have re-instated the expired/non-renewed marine policy." D.E. 15-10 ¶ 24; *see Giroire,* 27 F. Supp. 2d at 1312-13 (To establish materiality, Lloyds provided the unrebutted affidavit . . . [in which Lloyds] . . . testifies that had Lloyds received a truthful "yes" answer to the question whether the boat was used for racing, Lloyds would have declined coverage. In light of such uncontradicted evidence, the Court finds that the misrepresentation was material as a matter of law.").[5] In addition, during the May 25, 2018 call Geico asked Quintero about the status and condition of his Vessel before reinstating the Policy, indicating that Geico considered these facts material to the calculation of the risk of the Policy. *See, e.g., Gulfstream*, 409 F.2d at 982 (explaining that insurer had "absolute right to demand full, open, honest, complete,

---

call, not the June 1, 2018 application. Moreover, the June 1, 2018 application does not reveal the time of the theft. Accordingly, this argument is unpersuasive.

[5] Quintero also argues that he "conveyed to [Geico] that his neighbor's motion sensors evidence that his boat had been stolen approximately one hour before he had called earlier that morning . . . as such, the Defendant's allegation of fraud in this action in association with the timing of Plaintiff's payment on the Policy premium on the same morning thereafter was admittedly unsupported . . . ." D.E. 39 at 4. But, whether or not Quintero committed fraud is not relevant. *Uberrimae fidei* voids the Policy even in the case of an innocent mistake; fraud is not necessary. *See Gulfstream Cargo*, 409 F.2d at 980–81 ("a mistake or commission material to a marine risk, whether it be willful or accidental, or result from mistake, negligence or voluntary ignorance, avoids the policy . . . .") (quotations omitted).

accurate disclosure of facts then well known <u>which bore directly upon the condition of the vessel.</u>") (emphasis added); *State Nat. Ins. Co. v. Anzhela Explorer, L.L.C.*, 812 F. Supp. 2d 1326, 1356 (S.D. Fla. 2011) (holding that whether bulkheads were watertight was material under *uberrimae fidei* because it affected the condition of the boat and the risk the insurer undertook in insuring the boat).

Quintero responds that there is a genuine dispute as to whether these misrepresentations and omissions were material because Quintero called Geico to inform it that his Vessel was stolen on the same day he called Geico to reinstate his Policy. D.E. 39 at 8. Therefore, Quintero argues that Geico "had knowledge of the purported material misrepresentation." *Id.* This does not create a genuine issue of fact as to materiality. First, Quintero did not disclose that when he called to reinstate the Policy, the Vessel had already been stolen. D.E. 17-3. Thus, Geico did not "have knowledge" of the misrepresentation. Second, the materiality of a misrepresentation turns on whether it would affect insurer's calculation of the risk of insuring the Vessel. *See AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296, 1304 (11th Cir. 2015). Quintero made a claim for the stolen Vessel approximately seven hours *after* he misrepresented its status and condition; information upon which Geico relied in calculating the risk of insuring the Vessel. The fact that Quintero later informed Geico that the Vessel was stolen does not erase his prior misrepresentations and require Geico to honor a Policy that was void *ab initio* and insure a stolen Vessel. *See HIH Marine Servs., Inc.,* 211 F.3d at 1363 ("The central principle of *uberrimae fidei*, however, is that the insured bears the burden of full and voluntary disclosure of facts material to the decision to insure . . . the law has placed the burden of good faith disclosure with the person in the best position to know all the facts: the insured.").

Quintero also points to O'Keefe's deposition to argue that Geico admitted that it had "no evidentiary basis to conclude that the Plaintiff in fact had knowledge that his Boat had been stolen when he called to pay the Policy premium." D.E. 39 at 4. This argument is similarly unpersuasive. Whether Quintero had actual knowledge of the state of his Vessel is irrelevant; the question is whether Quintero omitted or misrepresented material information when asked about the status of his Vessel on May 25, 2018. *See Steelmet,* 747 F.2d at 695 (holding that a material misrepresentation, even if it is a result of "mistake, accident, or forgetfulness, is attended with the rigorous consequences that the policy never attaches and is void") (internal quotation marks omitted); *AGF Marine Aviation & Transp. v. Cassin*, 544 F.3d 255, 262 (3d Cir. 2008) ("A party's intent to conceal, or lack thereof, is irrelevant to the *uberrimae fidei* analysis.") (citing *Steelmet*, 747 F.2d at 695) (emphasis added).; *Giroire*, 27 F. Supp. 2d at 1312 ("Under *uberrimae fidei* a material misrepresentation on a marine insurance policy, even if innocently made, is grounds for rescission."). *Uberrimae fidei* imposes a "**heavy burden**" upon Quintero to disclose all material facts about the Vessel that were within his knowledge or "**ought to be within**" his knowledge. *Gulfstream Cargo,* 409 F.2d at 980–8 (emphasis added). Indeed, even if Geico had not directly asked Quintero about the status of his Vessel, the Eleventh Circuit has even extended the duty to disclose under *uberrimae fidei* "to those material facts not directly inquired into by the insurer." *HIH Marine Servs., Inc*., 211 F.3d at 1362.

Accordingly, the Court agrees that Quintero's misrepresentations and concealment are material and void the Policy *ab initio* pursuant to the "well-entrenched" doctrine of *uberrimae fidei*. Quintero cannot make a claim for a loss under a void Policy and therefore his declaratory judgment claims fail and the Court must enter summary judgment in favor of Geico. As the Court has concluded that the Policy is void *ab initio* under *uberrimae fidei,* the Court does not address

Quintero's remaining arguments as to the Policy or his waiver arguments under Florida law.[6] *See HIH Marine Servs., Inc.*, 211 F.3d at 1362 ("[W]e focus on the issue of material misrepresentation because a finding of material misrepresentation in this marine insurance case voids the policy and renders immaterial the appellants' arguments on insurable interest and waiver and estoppel.") (emphasis added); *Giroire*, 27 F. Supp. 2d at 1312 ("There has been no indication from the Eleventh Circuit that affirmative defenses such as waiver and estoppel may be used to avoid the time-honored obligation of good faith and full disclosure.").

B. Cancellation/Renewal of the Policy

Although the Court finds that Geico is entitled to summary judgment, in the interest of completeness, the Court briefly addresses Quintero's contentions regarding whether the Policy remained in effect on May 25, 2018 or was cancelled, renewed, or expired. Throughout his Motion and in response to Geico's Motion, Quintero makes much of the fact that he never "expressed orally, writing, or otherwise, that he did not seek to have the Policy in place during the interim period." D.E. 16 ¶ 3. He goes so far as to move for sanctions because "Mr. Quintero never stated that he wanted to cancel the policy or directly note or intimate that he wanted to cease coverage with GEICO Marine Insurance Company." D.E. 44. Although not entirely clear, Quintero appears to be arguing that his Policy was still effective from the date of his first call to Geico on May 4, 2018 to the date his Vessel was stolen on May 25, 2018, making the theft of the vessel a covered

---

[6] Quintero asserts that Geico waived any denial of coverage because it "had knowledge" of the misrepresentation and because it continued to collect premiums and recognize the existence of the policy until January 2019. D.E. 39 at 11-12; *see Johnson v. Life Ins. Co. of Ga.*, 52 So.2d 813 (Fla. 1951) (explaining that "when an insurer has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver the Policy."). But, the Policy is not governed by Florida law, it is governed by "United States federal admiralty law." D.E. 15-3 at 1. As such, Quintero's argument relying on Florida law is not persuasive. *See Giroire,* 27 F. Supp. 2d at 1312 (Explaining that in the Eleventh Circuit, *uberrimae fidei*, and not Florida law, controlled the parties' obligations in marine insurance contracts, and therefore the insured's arguments that the insurer waived forfeiting the policy because it had constructive knowledge of material misrepresentation was not persuasive.).

15

loss under the Policy.[7] But, Quintero never explains the relevance of this position with regard to his obligations under *uberrimae fidei*; his sole argument against the application of *uberrimae fidei* is that the parties' contracted around it. Even if Quintero is correct that the Policy never lapsed, Quintero's misrepresentations regarding the status of the Vessel during the May 25, 2018 call, void the Policy *ab initio*, regardless of whether the Policy was renewed, cancelled, or expired because Quintero failed to fully and voluntarily disclose to Geico all facts material to its decision to insure against theft of the vessel. *See HIH Marine Servs., Inc.*, 211 F.3d at 1362.

### V.  Conclusion

For the reasons discussed *supra*, it is

ORDERED AND ADJUDGED that Quintero's Motion, D.E. 16, is DENIED, and Geico's Motion, D.E. 15, is GRANTED. Quintero's Complaint is DISMISSED WITH PREJUDICE. The Court will separately enter judgment in favor of Geico pursuant to Federal Rule of Civil Procedure 58. It is further

ORDERED AND ADJUDGED that the case is CLOSED for administrative purposes. All hearings are CANCELLED; all other pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this _29th__ day of April, 2019.

*[signature]*

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record

---

[7] Moreover, the Policy, the Notice of Policy Expiration, and the recorded telephone transcripts indicate that the previous policy's term expired on May 5, 2018 and that Quintero called to reinstate his Policy on May 25, 2018 after the Vessel had been stolen. *See* D.E. 33-4; D.E. 17-2; D.E. 15-1; D.E. 46 at 1-2.